**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005334
13-DEC-2016
08:40 AM**

NO. CAAP-13-0005334

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


SCOTT T. FUJIWARA, Plaintiff-Appellee,
v.
JOHN M. OHAMA, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL NO. 1RC-13-1-4379)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant John M. Ohama (Ohama) appeals from the "Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment" (Summary Judgment Order), filed on October 11, 2013 in the District Court of the First Circuit, Honolulu Division (district court).[1]

On appeal, Ohama contends that the district court erred when it: (1) granted Plaintiff-Appellee Scott T. Fujiwara's (Fujiwara) Motion for Summary Judgment; (2) entered a Judgment in favor of Fujiwara; (3) denied Ohama's Motion for Summary Judgment; and (4) awarded attorneys' fees and costs to Fujiwara.

For the reasons discussed below, we resolve Ohama's points of error as follows and reverse.

---

[1]  The Honorable Hilary Benson Gangnes presided.

## Brief Background

Ohama and Fujiwara do not dispute the material facts of this case. This appeal concerns the interpretation of a Membership Unit Transfer Agreement of Island Realtors, LLC (Transfer Agreement) dated November 30, 2012, in which Ohama transferred his fifty percent membership in Island Realtors, LLC, a Hawai'i limited liability company (the Company) to Fujiwara.

On July 3, 2013, Fujiwara filed a Second Amended Complaint against Ohama for $12,085.08, stating, "[p]ursuant to the [Transfer] Agreement entered into by the parties, [Ohama] is obligated to pay one-half of the charges from RH Associates and PACXA accrued prior to November 1, 2012."

On August 23, 2013, Fujiwara filed a Motion for Summary Judgment. In the Memorandum in Support of Motion, Fujiwara argued, *inter alia*, that the "Transfer Agreement provides, at Section 3.11(a) that all expenses and costs incurred by Island Realtors prior to the October [31], [2012] closing would be shared equally between the parties." Fujiwara also argued that he was entitled to judgment on his breach of contract claim against Ohama in the amount of $11,584.43. Fujiwara attested that true and correct copies of the Transfer Agreement, and two invoices from PACXA and RH Associates, CPAs, Inc. fka Lum & Hiromoto, Certified Public Accountants, Inc. (RH Associates) were attached to his declaration.

Also on August 23, 2013, Ohama filed a Motion for Summary Judgment. In the Memorandum in Support of Motion, Ohama argued that "there is nothing in the Transfer Agreement that expanded the liability of Defendant Ohama to include the fees for accounting and computer services, which are ordinary business expenses." Ohama stated that "[i]n interpreting the terms of the Transfer Agreement according to their plain, ordinary, and accepted sense, it is clear that Section 3.11(a) is only applicable to claims arising out of 'acts and omissions' committed jointly by Island Realtors and Defendant Ohama."

On October 11, 2013, the district court filed the Summary Judgment Order. The district court awarded Fujiwara

2

$11,584.42 in contract damages, $2,896.10 in attorney's fees, and $145.00 in costs, for a total of $14,625.52.

On October 21, 2013, Ohama filed a motion for reconsideration, which the district court denied on October 22, 2013.

On November 18, 2013, Ohama timely filed a Notice of Appeal from the Summary Judgment Order.

## Summary Judgment Rulings

Ohama contends that the district court erred when it granted Fujiwara's Motion for Summary Judgment, denied Ohama's Motion for Summary Judgment, and entered judgment in favor of Fujiwara.

"Contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." Santiago v. Tanaka, 137 Hawai'i 137, 155, 366 P.3d 612, 630 (2016) (citation omitted). Further, "[u]nder principles of contract interpretation, an agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." Id. (citation omitted).

Section 3.11(a) of the Transfer Agreement provides:

> 3.11 Transferor's Liability Prior to Closing: Transferee's Liability Post Closing.
> (a) Prior to Closing. Transferor shall hold harmless and indemnify Transferee for any costs, damages, claims, penalties, judgments, expenses, attorneys' fees or other liabilities resulting from or attributable to the acts and omissions of Transferor occurring prior to Closing Date if Transferor acted alone or failed to act alone, but shall specifically exclude claims where Transferor acted or failed to act together with Transferee or Company or Company's agents, employees, successors or assigns ("Transferor's Sole Acts or Omissions"); provided, however, that, to the extent that such costs, damages, claims, penalties, judgments, expenses, attorneys' fees or other liabilities resulting from Transferor's Sole Acts or Omissions are offset or paid for by insurance Transferor shall not be required to personally reimburse the Transferee or Company for same; provided further that this provision shall not apply to costs, damages, claims, penalties, judgments, expenses, attorneys' fees or other liabilities based on the Company's line of credit or Transferor's Financial Guaranty which Transferee and Company have agreed to jointly and severally indemnify and hold harmless Transferor. With regard to any costs, damages, claims, penalties, judgments, expenses, attorneys' fees or other liabilities resulting from or attributable to the acts or omissions of Transferor together

> with Transferee or Company or Company's agents, employees, successors or assigns, occurring prior to Closing Date, Transferor's maximum liability shall be no more than fifty percent (50%) of the total liability. To the extent that third-party claims are based solely due to Transferor being a member of Company prior to Closing Date and not due to any act or omission of Transferor, alone or together with Transferee or Company, Transferor's liability shall be as provided by law.

(Emphasis added.)

Section 3.11(a) consists of three sentences. In asserting Ohama's liability, Fujiwara expressly notes that the first and third sentences of Section 3.11(a) do not apply. Rather, Fujiwara relies on the second sentence of Section 3.11(a).[2] The second sentence requires the existence of "any costs, damages, claims, penalties, judgments, expenses, attorneys' fees or other liabilities resulting from or attributable to the acts or omissions of [Ohama] together with [Fujiwara] or Company or Company's agents, employees, successors or assigns, occurring prior to Closing Date[.]" (Emphasis added.)

In his Memorandum in Support of Motion, Fujiwara asserted that fifty percent of the pre-closing charges in the PACXA and RH Associates invoices constituted Ohama's liability under Section 3.11(a). The PACXA invoice billed $1,535.34 in total, of which Fujiwara marked on the invoice that the Company incurred $1,001.31 prior to the closing date. The items billed in the PACXA Invoice were: "Setup Colleen's new phone"; "Users can't login to Backscanner PC"; "HP printer will not 'start up'"; "Set up Julie Kemmis login"; "Shaila and John computer problems"; "Set up Mark Hirano's login on shared computer in back of office"; "Set up Kaelin Oaks on Mac computer"; "Island Realtors"; "Moving"; and "Cannot log onto shared computer." Thus, the charges appear to be for various computer and phone related services. The RH Associates invoice billed $22,743.45 in total, of which Fujiwara marked on the invoice that the Company incurred $22,167.53 prior to closing. The items billed in the RH

---

[2] Based on the district court's oral ruling during the hearing on the summary judgment motions, it appears the district court also relied on the second sentence of Section 3.11(a).

Associates Invoice included: year-end accounting services, computer and handling charges for tax returns, payroll, issues regarding an unemployment claim (not attributed to Fujiwara or Ohama), and property management issues.

Although the relevant charges billed in the two invoices may constitute "costs, damages, claims, penalties, judgments, expenses, attorneys' fees or other liabilities," there is nothing in the record indicating that the charges resulted from, or are attributable to, acts or omissions of Ohama together with Fujiwara or the Company. Fujiwara asserts that the second sentence in Section 3.11(a) covers "pre-closing liabilities due to the acts or omissions of either (1) [Ohama] together with [Fujiwara] or (2) the Company or Company's agents, employees, successors or assigns." (Emphasis added.) Thus, under Fujiwara's interpretation, the second sentence covers indebtedness due solely to an act of the Company. We disagree. Such an interpretation is simply not consistent with a plain reading of the second sentence. Moreover, Fujiwara's interpretation -- seeking to eliminate the acts or omissions of Ohama as a condition for his responsibility under the second sentence -- would render that sentence incompatible with Section 3.11(a) as whole, which addresses different situations based on whether or not Ohama's acts or omissions were attributable for the alleged liability. In particular, the third sentence already addresses situations where a claim is not based on an act or omission of Ohama (and Fujiwara expressly asserts the third sentence does not apply here).

Based on our reading of the Transfer Agreement, the second sentence of Section 3.11(a) does not support Fujiwara's contention that Ohama owed fifty percent of the amounts in the subject invoices incurred prior to the closing date. Rather, considering the contract as a whole, we agree with Ohama that Section 3.11(a) does not require him to pay half of the pre-closing items on the invoices. Further, no other provision supports Fujiwara's claim that Ohama was liable for the contested amounts.

5

We thus conclude that the district court erred in granting Fujiwara's Motion for Summary Judgment and in denying Ohama's Motion for Summary Judgment. We hold that, given the undisputed facts in this case, summary judgment for Ohama is warranted.

### Attorney's Fees

Because we hold that summary judgment should have been granted for Ohama, and not Fujiwara, we also vacate the district court's award of attorney's fees and costs to Fujiwara. The case will be remanded to the district court for further proceedings to allow Ohama to request attorney's fees and costs as the prevailing party.

### Conclusion

Based on the above, the Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment filed on October 11, 2013, in the District Court of the First Circuit, Honolulu Division, is reversed. Summary judgment is hereby granted in favor of Ohama. This case is remanded to the district court for further proceedings consistent with this decision.

DATED: Honolulu, Hawai'i, December 13, 2016.


On the briefs:

Glenn N. Taga,
for Defendant-Appellant.

Patrick K. Shea,
Sara Jo Buehler,
(Shea & Kamiya, LLC)
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge

6